[No. 49711-7.   En Banc.   January 12, 1984.]

*In the Matter of the Personal Restraint of*
HAROLD LEE DOWELL, *Petitioner.*

*Mitchell A. Riese* of *Institutional Legal Services Project,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen D. Mix, Assistant,* for respondent.

DIMMICK, J.—Harold Lee Dowell seeks to restore his minimum custody status by way of a personal restraint petition, asserting that the Department of Corrections violated due process when his minimum custody status was upgraded to medium custody, without notice to him or an opportunity to be heard. We disagree and deny the petition.

Dowell was convicted of first degree rape, second degree assault and carnal knowledge, involving his two daughters, in Spokane County, November 1975. He received concurrent sentences of 20, 10 and 15 years respectively. His minimum term was set at 10 years. He was incarcerated at the state penitentiary at Walla Walla.

In 1979, Dowell was authorized for early parole, conditioned upon an approved parole plan. Because of a preincarceration injury to his leg likely to require surgery upon release, he attempted to arrange parole to a California Veterans Administration hospital. The hospital refused to participate in the plan, and parole was denied for failure to submit an adequate plan.

In June 1980, Dowell was granted minimum custody status to enable him to get a medical work–up for eventual release to a Veterans Administration hospital or some other agency for an operation. The report implied that because of his medical needs he would benefit from better living conditions and furlough privileges.

In April or May of 1982, Dowell was temporarily transferred to Monroe Reformatory for a medical work–up at Seattle VA hospital and for exploration of a parole plan under "intensive supervision." Again, the plan was found to be inadequate. Dowell's medical condition was also discovered to be in remission, requiring no present medical attention.

Upon Dowell's return to the penitentiary, the Board of Prison Terms and Paroles scheduled a parolability hearing

pursuant to RCW 9.95.100. Prior to the hearing, Dowell was moved to the medium security building and his custody status upgraded to medium. This change appears to be based on the Monroe counselor's recommendation that security be increased pending the hearing. The recommendation accompanied a report to the Board outlining Dowell's various offenses, his refusal to accept treatment in a sexual psychopath program, a prior criminal record, and the opinion that Dowell had unusually high manipulative skills. The report also acknowledged that he had an infraction–free record during his confinement.

The decision to upgrade Dowell's custody status was made without notice to Dowell and without a hearing. Dowell now alleges a liberty interest in retaining his minimum custody status as long as he maintains an infraction–free record. He contends that the Department revoked that status without due process. We accepted certification of his personal restraint petition from the Court of Appeals, Division Three, to determine whether an inmate of a Washington correctional facility has a liberty interest in maintaining any specific custody status until such time as the inmate violates a prison rule.

Although incarcerated prisoners necessarily lose many of the rights and privileges of ordinary citizens, they do retain a modicum of constitutional protections. *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); *In re Young*, 95 Wn.2d 216, 622 P.2d 373 (1980). Prisoners have an interest in not being deprived of life, liberty or property without due process of law. *In re Young, supra* at 220. Some deprivations are so clearly "grievous losses" that prisoners must be afforded the procedural protections of due process. *E.g., Vitek v. Jones*, 445 U.S. 480, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980) (transfer from prison to mental institution requires prior hearing).

■ Dowell first argues that his loss of minimum custody status is substantial enough to require Fourteenth Amendment protection. We reject this contention. Recently, the United States Supreme Court found that transfer of a pris-

oner from the general prison population to administrative segregation for nonpunitive reasons was not protected by the due process clause. *Hewitt v. Helms,* ___ U.S. ___, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983). The Court reasoned that prison officials must retain broad administrative and discretionary authority over the institutions they manage. That authority would be threatened if every substantial deprivation imposed by prison authorities was subjected to judicial review through triggering of the due process clause. *Hewitt,* 103 S. Ct. at 869. The *Hewitt* Court found that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons was well within the normal range of confinement ordinarily contemplated by a prison sentence, and thus not independently protected by the due process clause. *Hewitt,* 103 S. Ct. at 869–70.

We think that Dowell's transfer from minimum to medium security status is analogous to the transfer in *Hewitt.* Transfer among various security classifications is within the expected terms of confinement for a prisoner. It is not a "grievous loss" requiring constitutional redress. Ordinarily, then, an inmate's security reclassification requires no scrutiny under the Fourteenth Amendment.

Dowell next argues, however, that the State has created a liberty interest warranting Fourteenth Amendment protection through statute and regulation, specifically RCW 72.09.130 and WAC 275–88–105(2)(f). Liberty interests cognizable under the due process clause have been recognized whenever the State places specific mandatory limits on official discretion. *Hewitt v. Helms, supra; Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979); *see also Perry v. Sindermann,* 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). Dowell claims that Washington law so circumscribes the Department's discretion in changing an inmate's custody classification that a liberty interest in maintaining a favorable status arises under state law.

RCW 72.09.130 requires the Department to adopt a system of incentive for good conduct, which *may* include

increases in the degree of liberty to be granted the inmate within the programs operated by the Department.[1] Assuming that this statute refers to security classifications within an institution, the section is permissive and not mandatory upon the Department. In finding a state law created liberty interest in *Hewitt,* the United States Supreme Court emphasized the mandatory language and the specific substantive predicates conditioning discretion in a Pennsylvania statute. *Hewitt,* 103 S. Ct. at 871. In *Olim v. Wakinekona,* ___ U.S. ___, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983), the Court found no liberty interest created by state law, despite departmental regulations which mandated a pretransfer hearing. In that case, the hearing committee merely made recommendations to the prison administrator whose final decision was unfettered by the regulations. Because state law did not inhibit the final decision to transfer "for whatever reason or no reason at all," there was no interest for due process to protect. *Olim; accord, Kincaid v. Duckworth,* 689 F.2d 702 (7th Cir. 1982) (interpreting Indiana law).

Dowell fails to cite any Washington law that grants prisoners certain custody classifications based on any particular findings. He argues instead that the Department's classification policies provide the specific predicates upon which classification must be based. This contention is meritless. The Department's policy manual indicates that classification is an ongoing process, subject to continual review and revision depending on past, present and anticipated needs of the inmate and the institutional programs. It does not provide particularized criteria that would bind the discretion of the Board.

---

[1]RCW 72.09.130 provides in part:

"The department shall adopt a system providing incentives for good conduct and disincentives for poor conduct. The system may include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance."

Dowell further contends that the State has created the expectation that an inmate will not be given increased custody status unless he violates a penitentiary rule. He cites RCW 72.09.130 (requiring a system of incentive for good conduct) and WAC 275–88–105(2)(f), which authorizes reclassification of custody status as a sanction for rule infractions, as creating that expectation.[2]

We do not find these cited sections applicable to administrative custody reclassifications. Even if appropriate to Dowell's situation, we do not read the cited sections as reasonably creating the expectations upon which Dowell relies. The RCW section, as has been pointed out, uses permissive, not mandatory, language. The WAC section lists numerous sanctions, only one of which is reconsideration of custody classification. These rules simply do not restrain the Department's discretion in custody status matters.

Dowell also urges this court to find the Department's classification policy manual invalid for failure to promulgate it under RCW 34.04, the administrative procedure act. It is unclear how invalidation of the manual will afford him the relief he seeks. The Department is under no obligation to house inmates according to any particular security classifications. If the guidelines are invalidated, the Department would then be free to make the security decisions necessary to meet institutional needs without taking into account the guidelines' broad program goals.

In sum, Dowell asks us to return him to minimum custody status until he is found to have committed an institutional infraction. Finding no "grievous loss" and no State created liberty interest, we decline to so severely restrict the Department's discretion in determining appropriate inmate custody status.

---

[2]The relevant portion of WAC 275–88–105(2) reads:

"(2) For serious infractions enumerated in WAC 275–88–030, one or more of the following sanctions may be imposed: . . .

"(f) Recommendation to the classification committee for reconsideration of custody classification . . ."

The petition is denied.

ROSELLINI, UTTER, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM and McMULLEN, JJ. Pro Tem., concur.