**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **NOV 0 8 2018**

_Fairhurst, CJ_ ·

CHIEF JUSTICE

This opinion was filed for record

at _8:00 am_ on _Nov 8, 2018_

_Susan L. Carlson_

SUSAN L. CARLSON
SUPREME COURT CLERK



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 94971-9 |
| | ) | EN BANC |
| DEREK E. GRONQUIST, | ) ) | |
| Petitioner. | ) ) ) | Filed: **NOV 0 8 2018** |

YU, J. — This case asks how a release date is calculated for a person serving consecutive sentences for felony sex offenses. In 1995, Derek Gronquist was sentenced to three consecutive, 114-month terms of total confinement for three counts of attempted first degree kidnapping with a special finding of sexual motivation. In this personal restraint petition (PRP), Gronquist claims that his sentence expired in 2016, so his continued total confinement is unlawful. The Department of Corrections (DOC) maintains that Gronquist's sentence will not expire until 2022 and that Gronquist must remain in total confinement until his sentence expires or he gets approval for a release plan, whichever comes first. The

parties' dispute arises from the way DOC tracks time served on consecutive, determinate sentences for felony sex offenses.

Rather than tracking all consecutive terms as a single sentence, DOC tracks each term separately. According to DOC's tracking system, when Gronquist had only earned release time (ERT) remaining on a term of confinement, he reached his early release date (ERD) for that term. On each term's ERD, DOC's tracking system "stopped" that term, "tolled" the remaining ERT on that term, and started Gronquist's next consecutive term. When Gronquist reached the ERD for his third and final term, the tolled ERT periods for each of his prior terms became available and started running again. Therefore, according to DOC's tracking system, Gronquist's sentence is structured like this:

| 2/28/95 | 8/10/00 | 2/4/07 | 6/14/13 | 5/31/22 |
|---|---|---|---|---|

Total confinement | E R T

- Taken to jail
- Enters DOC custody
- 1st term ERD (includes estimated ERT)
- 2nd term ERD (includes estimated ERT)
- 3rd term ERD (includes estimated ERT)
- Sentence expires

Gronquist, however, reasons that because each term of confinement is for 114 months, each one expired 114 months after the date it began. He contends that

2

his final term began in 2007 and therefore expired 114 months later, in 2016.

Gronquist thus argues his sentence must be structured like this:[1]



Gronquist's PRP is not frivolous. DOC's tracking system is complicated, its explanations have been confusing and contradictory, and it has not pointed to clear legal authority directly supporting its position. However, Gronquist has not shown that his continued total confinement is unlawful. He was sentenced to three consecutive, 114-month terms, adding up to 342 months. DOC has no authority to change the length of Gronquist's sentence or to run any portion of his consecutive terms concurrently. Gronquist's proposed sentence structure, however, would require it to do so. We therefore deny relief on Gronquist's PRP.

---

[1] These visual timelines are representational only and not drawn to scale. Additionally, the parties' ERDs differ slightly, possibly due to adjustments made after DOC restored some ERT that Gronquist had previously lost. The parties do not address this discrepancy in detail, and it is not necessary to our resolution of the issue presented.

## BACKGROUND

A.   Terminology

To provide clarity for the factual background, procedural history, and legal analysis below, we first define the specific terminology used in this context.

1.   "Community custody" and "community placement"

Pursuant to the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, at the time of Gronquist's offenses, "community custody" referred to "that portion of an inmate's sentence of confinement in lieu of earned early release time served in the community subject to controls placed on the inmate's movement and activities by the department of corrections."[2] Former RCW 9.94A.030(4) (LAWS OF 1993, ch. 338, § 2). "Community placement" referred to all periods of community custody and postrelease supervision. *Id.* at (5).

2.   "Earned release time," or "ERT"

"The SRA contemplates that an offender may be released from total confinement before serving the full sentence imposed by the court. This is accomplished through 'earned release time.'" *In re Pers. Restraint of Stuhr*, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016). An offender in custody may accumulate ERT "for good behavior and good performance, as determined by the correctional

---

[2] We apply the SRA applicable at the time of Gronquist's offenses. RCW 9.94A.345. However, we do not intend to imply that the result would be different pursuant to the current version of the SRA.

agency having jurisdiction." Former RCW 9.94A.150(1) (LAWS OF 1992, ch. 145, § 8). The total amount of ERT a person may accumulate is capped by statute as a percentage of his or her total sentence. *Id.* The applicable percentage depends on the nature of the underlying offense. Gronquist's ERT is capped at 33 percent. *In re Pers. Restraint of Smith*, 139 Wn.2d 199, 201, 208-09, 986 P.2d 131 (1999).

DOC calculates the maximum amount of ERT a person may accumulate when the person first enters DOC custody. *Stuhr*, 186 Wn.2d at 54. However, the amount of ERT actually accumulated will fluctuate throughout the course of a person's sentence. For instance, the person may lose ERT for disciplinary infractions. *Id.* at 53. ERT may be lost on a prospective basis, and ERT that was previously lost can be restored in accordance with DOC policy. *Id.*

Some offenders are entitled to early general release based on accumulated ERT. Former RCW 9.94A.150(1). However, that is not true for felony sex offenders such as Gronquist. *Id.* at (2). "Instead of general release, the Legislature specified that [such individuals] may only become eligible for transfer to community custody status." *In re Pers. Restraint of Crowder*, 97 Wn. App. 598, 600, 985 P.2d 944 (1999).

Sex offenders thus have no "protected liberty interest in early release to community custody." *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 733, 214 P.3d 141 (2009). They may only become eligible for transfer to community

custody in lieu of earned release, and "[t]he legislature granted DOC the authority to develop a program structuring the guidelines for eligibility and release of sex offenders into the community before expiration of their sentences." *Id.* at 743.

Pursuant to this authority, DOC has adopted Policy 350.200 (rev. Aug. 2, 2010), which requires sex offenders to submit a release plan for approval before the offender can be transferred to community custody. Without an approved release plan, the offender must serve his or her ERT in total confinement. *In re Pers. Restraint of Capello*, 106 Wn. App. 576, 579, 24 P.3d 1074 (2001).

3.    "Early release date," or "ERD"

ERD is a term DOC uses to refer to the date when all that remains on a term of confinement is ERT. When a person serving a single term of confinement reaches the ERD, the person either is generally released or may become eligible for transfer to community custody, as discussed above.

Gronquist, however, is serving three consecutive terms. He could not be transferred to community custody until he had served all periods of total confinement on all three terms. Former RCW 9.94A.400(5) (LAWS OF 1990, ch. 3, § 704). Therefore, on the ERD for Gronquist's first term, DOC started his second term. Likewise, on the ERD for Gronquist's second term, DOC started his third term. On the ERD for Gronquist's third and final term of confinement, he became eligible for transfer to community custody.

4.    "Maximum expiration date"

DOC's internal tracking system and the parties' briefing use the phrase "maximum expiration date" to refer to the date on which Gronquist can no longer be held in total confinement pursuant to his judgment and sentence. The parties' disagreement focuses on what this date is.

The phrase "maximum expiration date" does not appear in the SRA, and it has not been used consistently in case law. For indeterminate sentences predating the SRA, we have used "maximum expiration date" to refer to the last day of the maximum prison term set by the sentencing court. *E.g., In re Pers. Restraint of Knapp*, 102 Wn.2d 466, 468, 687 P.2d 1145 (1984). However, in later appellate cases considering determinate, SRA-based sentences, "maximum expiration date" has been used to refer to the last day a person may be kept in prison on his or her judgment and sentence if no ERT is accumulated. *E.g., Blick v. State*, 182 Wn. App. 24, 27, 328 P.3d 952 (2014).

Applying this later usage, DOC is correct in its assertion that the maximum expiration date of Gronquist's sentences is on the last day of his three consecutive sentences without any adjustment for ERT. But that is not what the parties actually dispute. They agree that *without* ERT, Gronquist would have to stay in total confinement until 2022. They dispute whether *with* ERT, Gronquist's continued total confinement is unlawful.

B.   Factual background and procedural history

On December 6 and 7, 1993, Gronquist tried to force three different teenagers into his car. *State v. Gronquist*, noted at 82 Wn. App. 1066, 1996 WL 470607, at *1. He was ultimately convicted of three counts of attempted first degree kidnapping with special findings of sexual motivation. *Id.* The special findings of sexual motivation make each attempted kidnapping a sex offense. Former 9.94A.030(29)(b).

Gronquist was given an exceptional sentence above the standard range of three consecutive, 114-month terms of total confinement. He was also sentenced to community placement "for two years or up to the period of earned release awarded pursuant to [former] RCW 9.94A.150(1) and (2) whichever is longer."[3] PRP, Attach. A, Ex. 1 (J. & Sentence, App. H).

Gronquist was taken into DOC custody on February 28, 1995. At that time, DOC calculated his potential ERD as occurring in 2018 and his maximum expiration date as occurring in 2022. These were hand-done calculations.

When DOC initially calculated Gronquist's ERD, it capped his potential ERT at 15 percent of his sentence. However, in 1999, this court held that

---

[3] Following *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009), the judgment and sentence was "amended to provide that the total term of confinement of 342 months plus the term of community custody may not exceed the statutory maximum of 360 months for the three consecutive sentences imposed in this case." Answer to Mot. for Discr. Review, App. C (Order Amending J. & Sentence, Ex. 3).

Gronquist was statutorily entitled to accumulate ERT at a rate of 33 percent. *Smith*, 139 Wn.2d at 208-09. DOC therefore recalculated Gronquist's ERD, this time using computer software, to August 9, 2013.

The new software also recalculated the maximum expiration date by adding 114 months to the date Gronquist was expected to begin serving his third and final term of confinement. This resulted in a maximum expiration date of October 8, 2016. A classification referral completed in 2000 also reflects a maximum expiration date in 2016, as does a calculation from July 2008.

Gronquist contends that this 2016 maximum expiration date is correct. DOC contends it was the result of a software error. DOC later updated its software and recalculated Gronquist's sentence, resetting the maximum expiration date to 2022.

Gronquist first learned of this recalculation around the time he reached his ERD in 2013. He wrote multiple grievances and letters in protest, contending that his final term of confinement expired in 2016, 114 months after he began serving it. For support, Gronquist relied on *In re Personal Restraint of Paschke*, 61 Wn. App. 591, 811 P.2d 694 (1991), and *St. Peter v. Rhay*, 56 Wn.2d 297, 352 P.2d 806 (1960). Over the next two-and-a-half years, DOC consistently asserted that the 2022 maximum expiration date was correct, but its explanations were unclear, inconsistent, and largely unsupported by relevant legal authority.

Eventually, Gronquist filed a PRP with the Court of Appeals, requesting an order resetting the maximum expiration date to 2016 and prohibiting DOC from confining him after that date. DOC filed a response but did not cite *Paschke*, *St. Peter*, or any other case responsive to Gronquist's claim. The Court of Appeals therefore requested a supplemental response from DOC. DOC's supplemental response distinguished *Paschke* and *St. Peter* but also directly conflicted with its original response regarding how a maximum expiration date is calculated.

The acting chief judge for the Court of Appeals dismissed Gronquist's PRP, and Gronquist sought discretionary review. DOC did not respond. Our commissioner requested an answer because "[t]he department's shifting positions have added to the confusion in calculating Mr. Gronquist's release date." Ruling, *In re Pers. Restraint of Gronquist*, No. 94971-9, at 3 (Wash. Nov. 17, 2017). After DOC filed its answer, this court granted review.

## ISSUES

A.    Should Gronquist's PRP have been referred to a panel of judges for a decision on the merits?

B.    Has Gronquist shown that he is being unlawfully restrained?

## ANALYSIS

To obtain relief on his PRP, Gronquist has the burden of showing that he is under an unlawful restraint. RAP 16.4(a); *In re Pers. Restraint of Grantham*, 168

Wn.2d 204, 205, 227 P.3d 285 (2010). He has not had a prior opportunity to judicially appeal the issues presented, so he is not required to make any threshold showing of prejudice. *Stuhr*, 186 Wn.2d at 52. Gronquist's continued total confinement is clearly a restraint, so our only question is whether Gronquist has shown that it is unlawful. *Id.* We hold he has not.

A.    Gronquist's PRP should have been referred to a panel of judges

Because the Court of Appeals' order dismissing Gronquist's PRP was entered by the acting chief judge alone, we must infer that the acting chief judge determined Gronquist's PRP to be frivolous. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 685, 363 P.3d 577 (2015) (plurality opinion); RAP 16.11(b). A frivolous PRP is one which "fails to present an arguable basis for collateral relief either in law or in fact, given the constraints of the personal restraint petition vehicle." *Khan*, 184 Wn.2d at 686-87. Although Gronquist is not entitled to relief, his PRP is not frivolous.

From November 1999 until July 2008, DOC calculated the maximum expiration date of Gronquist's sentences to be in 2016. When Gronquist challenged DOC's recalculation of the maximum expiration date to 2022, DOC repeatedly failed to provide a clear, legally supported explanation to him or to the courts considering his claim. And as shown by the analysis below, resolving the

merits requires parsing a complex system of sentencing statutes with no directly controlling authority.

Gronquist's PRP presents an arguable basis for relief and can be decided solely on the record presented. It should therefore have been referred to a panel of judges on the Court of Appeals for a decision on the merits. RAP 16.11(b). However, the failure to do so was remedied by our consideration of Gronquist's motion for discretionary review. *Khan*, 184 Wn.2d at 687. We now consider his PRP on the merits and deny relief.

B.    Gronquist has not met his burden of showing that his restraint is unlawful

Gronquist contends that DOC either (1) miscalculated his maximum expiration date in violation of his judgment and sentence, and the SRA, or (2) capped his ERT at 15 percent of his sentence in violation of *Smith* and the constitutional prohibition on double jeopardy. If Gronquist is correct on either point, his continued total confinement is an unlawful restraint. RAP 16.4(c)(2). To determine whether Gronquist is correct, we must interpret the SRA. Statutory interpretation is a question of law reviewed de novo. *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (2011).

1.   DOC's tracking system lawfully tolled the ERT on Gronquist's terms of confinement

There is no provision in the SRA that explicitly allows (or forbids) tolling ERT on consecutive sentences. However, statutory interpretation requires us to consider "'the statutory scheme as a whole.'" *Id.* (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). As a whole, the SRA makes it clear that such tolling is lawful, while the sentence structure proposed by Gronquist is not.

a.   *Paschke* does not apply

Gronquist relies primarily on *Paschke*, which held that the time remaining on one sentence continues to run when a person is paroled to begin serving a subsequent consecutive sentence. 61 Wn. App. at 595. However, *Paschke* considered an indeterminate, pre-SRA sentence and, therefore, does not apply here.

In 1972, Paschke was "sentenced to consecutive maximum terms of 10 and 20 years" for "abduction and carnal knowledge," respectively. *Id.* at 592. In 1974, he was paroled from the abduction sentence and began serving the carnal knowledge sentence. *Id.* In 1978, he was paroled from the carnal knowledge sentence but was convicted of rape the next year. *Id.* His parole was revoked, "and his new minimum term was set at the maximum sentence expiration date. The issue [was] when that date will be." *Id.* at 593.

13

The Court of Appeals held that Paschke's abduction sentence expired in 1982, 10 years from the date he began serving it. *Id.* at 594. Likewise, the carnal knowledge sentence expired in 1994, 20 years from the date Paschke began serving it. *Id.* "Thus, the latest date Mr. Paschke can be held is June 19, 1994." *Id.* at 595 (citing *St. Peter*, 56 Wn.2d 297). The 8 years remaining on Paschke's abduction sentence did not toll while he was serving the carnal knowledge sentence because "[h]is sentence continues to run notwithstanding his parole." *Id.* (citing *State v. Jennings*, 45 Wn. App. 858, 860, 728 P.2d 1064 (1986)).

If Gronquist were serving an indeterminate, pre-SRA sentence, *Paschke* would control, and we would grant relief on his PRP. But Gronquist is serving a determinate, SRA-based sentence, and parole does not apply to him. RCW 9.95.110, .115, .900. Instead of being released early from each of his terms of confinement on *parole*, Gronquist began serving each consecutive term when all that remained on the previous term was *ERT*. This is not just a difference in wording. Parole and ERT are different concepts and subject to different laws.

"[P]arole is not a right but a mere privilege conferred as an act of grace by the state through its own administrative agency." *January v. Porter*, 75 Wn.2d 768, 774, 453 P.2d 876 (1969). "One on parole from a final judgment and sentence of imprisonment is not a free man." *Id.* at 776. Instead, "[h]is status on parole has been aptly described as that of one who is simply serving his time

outside the prison walls." *Id.* Therefore, when the offender is paroled to begin serving a subsequent consecutive sentence, the time on the underlying sentence continues to run. *Paschke*, 61 Wn. App. at 595; *Jennings*, 45 Wn. App. at 860. Meanwhile, as applied to felony sex offenders, ERT provides only that the offender may become eligible to serve a portion of his or her sentence on community custody, rather than in total confinement.

*Paschke* relied on the fact that the offender was released early on parole. Gronquist was not. Therefore, *Paschke*'s analysis does not apply here, nor do the statutes and precedent it relied on.

b.     Gronquist's proposed sentence structure is not permitted by law

As shown by the visual timelines at the beginning of this opinion, Gronquist argues that the ERT on his first term overlapped with the beginning of his second term and the ERT on his second term overlapped with the beginning of his third term. That sentence structure conflicts with Gronquist's judgment and sentence, and the SRA. DOC is thus acting lawfully by refusing to apply it.

First, the overlap in Gronquist's proposed sentence structure necessarily means that parts of each of his terms would be served concurrently; that is, he would receive credit for two terms of confinement at the same time. This is prohibited by Gronquist's judgment and sentence, which clearly requires each 114-month term to be served consecutively, that is, one at a time. DOC must follow

this requirement because it "ha[s] no authority to either correct or ignore the final judgment and sentence." *Dress v. Dep't of Corr.*, 168 Wn. App. 319, 329, 279 P.3d 875 (2012).

Second, Gronquist's sentence structure would mean that his ERT would actually reduce the length of his first two terms of confinement and therefore would reduce the length of his overall sentence. As discussed above, the SRA does not allow those convicted of felony sex offenses to reduce the length of their sentences with ERT. And no offender may be released from confinement early, except in compliance with the SRA. Former RCW 9.94A.150.

Third, in addition to reducing Gronquist's overall sentence, his proposed sentence structure could reduce the amount of time he must spend under supervision in the community. As required by former RCW 9.94A.120(8)(b) (LAWS OF 1993, ch. 31, § 3), Gronquist was sentenced to community placement "for two years or up to the period of earned release awarded pursuant to [former] RCW 9.94A.150(1) and (2) *whichever is longer*." PRP, Attach. A, Ex. 1 (J. & Sentence, App. H) (emphasis added). If the ERT on Gronquist's first two terms expired while he was in total confinement, as he contends, then the longest amount of time he might serve in the community would be *less than* the period of ERT he actually accumulated. This conflicts with the explicit language of his judgment

16

and sentence and the SRA. It also conflicts with the legislature's strong policy favoring community custody for sex offenders. *See Jones*, 172 Wn.2d at 246.

Because the sentence structure Gronquist advocates for is inconsistent with his judgment and sentence and the SRA, DOC's refusal to apply it is lawful. Gronquist therefore does not show that he is under an unlawful restraint.

      c.     DOC's tolling of ERT on Gronquist's consecutive sentences is consistent with the SRA

Despite the unlawfulness of his proposed sentence structure, Gronquist is correct on one important point: there is no SRA provision that explicitly allows DOC to toll ERT on consecutive terms of confinement. However, absent an expressly controlling statutory provision, "we analyze the statutory scheme" in order "to achieve a harmonious total statutory scheme maintaining the integrity of the respective statutes." *Id.* at 243. Here, tolling of ERT is consistent with the SRA as a whole.

The closest thing to an on-point statute in the SRA is its provision that "[a]ny period of supervision shall be tolled during any period of time the offender is in confinement for any reason." Former RCW 9.94A.170(3) (LAWS OF 1993, ch. 31, § 2). If ERT were a "period of supervision," this provision would easily answer the question presented, but that is not necessarily the case.

17

Former RCW 9.94A.170(3) distinguishes between periods of supervision and periods in confinement. Thus, time spent in total confinement cannot be a period of supervision. However, as discussed above, a person convicted of felony sex offenses must serve his or her ERT in total confinement unless he or she has an approved release plan. Therefore, the provision that any period of supervision must toll while the offender is in confinement does not *explicitly* require tolling of ERT on consecutive terms imposed for felony sex offenses.

Nevertheless, such tolling is *implicitly* allowed because "in the case of consecutive sentences, all periods of total confinement shall be served before any partial confinement, community service, community supervision, or any other requirement or conditions of any of the sentences." Former RCW 9.94A.400(5). Transfer to community custody is thus not possible until an offender has served all of the total confinement time for every one of his or her consecutive terms.

It would be absurd if part of a sentence could expire before it was even possible to begin serving it. Tolling ERT avoids such a result, and where possible, we always interpret statutes to avoid absurd results. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). Thus, tolling of periods of *eligibility* for community custody, in addition to *actual* periods of community custody, is entirely consistent with the SRA as applied to Gronquist and is therefore lawful.

18

2.      Gronquist's additional arguments are without merit

With the court's permission, Gronquist raised two additional arguments in his supplemental brief. We reject them both on their merits.

First, Gronquist contends that DOC's recalculation of his maximum expiration date violated the constitutional prohibition on double jeopardy, which protects "against sentence adjustments that upset a defendant's legitimate 'expectation of finality in his sentence.'" *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir. 2005) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)); *see* U.S. CONST. amend. V. We do not doubt that Gronquist had a subjective expectation that his sentence would expire in 2016 and that he would be released at that time. However, as discussed above, DOC did not have any lawful authority to generally release Gronquist in 2016. Correcting Gronquist's sentence calculations did not actually adjust his sentence and was therefore not a double jeopardy violation.

Second, Gronquist raises a collateral estoppel argument based on *In re Personal Restraint of Jensen*, an unpublished Court of Appeals opinion. Noted at 170 Wn. App. 1017, 2012 WL 3686270. He acknowledges *Jensen* cannot be cited as precedent pursuant to GR 14.1(a), but contends that the same double jeopardy issue was raised there and DOC lost on the merits, so DOC is collaterally estopped from challenging Gronquist's double jeopardy argument here.

19

However, unlike Gronquist, the petitioner in *Jensen* was subjected to an actual sentence adjustment. DOC revised Jensen's risk assessment and reduced his ERT, "not only for the sentence he was then serving, but also for the three sentences for which the department had certified his earned release time and release dates." *Jensen*, 2012 WL 3686270, at *1. This was unlawful because former DOC policy applicable at the time provided that when a person was transferred from one consecutive sentence to the next, DOC could not revoke ERT that the person had accumulated on the first sentence. *Id.* at *4.

Gronquist's ERT was not retroactively revoked or reduced. Instead, DOC recalculated the maximum expiration date of Gronquist's sentence based on lawful tolling of his ERT. *Jensen* therefore did not consider an "identical" issue and cannot be the basis for collateral estoppel here. *Dot Foods, Inc. v. Dep't of Revenue*, 185 Wn.2d 239, 254, 372 P.3d 747 (2016), *cert. denied*, 137 S. Ct. 2156 (2017).

## CONCLUSION

Gronquist's PRP is not frivolous, but his sentence has not expired and he does not otherwise show that he is being unlawfully restrained. We therefore deny relief on his PRP.

Yu, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Madsen, J.

González, J.

Owens, J.

Worswick, J.P.T.