IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>MICHAEL VASILIY KOLESNIK,<br><br>                        Petitioner. | No. 85911-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Michael Kolesnik seeks relief by means of a personal restraint petition. Kolesnik contends he is unlawfully restrained because (1) the Department of Corrections refused to assign him a lower custody classification level because of a federal immigration detainer issued by Immigration and Customs Enforcement (ICE); (2) the Department intends to hold him in custody for 48 hours past his earned release date (ERD) solely to facilitate his transfer to the custody of immigration authorities; and (3) the Department's policies with respect to immigration detainers are inconsistent with the legislative intent of recent statutes that limit Washington's role in enforcing federal immigration law. For the reasons that follow, we deny relief.

FACTS

Michael Kolesnik is serving a 20-year sentence imposed upon his 2006 jury conviction of assault in the first degree. Kolesnik is currently housed at Stafford Creek Corrections Center, with a custody level of "Minimum 3—Long Term Minimum" and an ERD of April 2, 2024. While Kolesnik has been in the

Department's custody, the Department has received detainers from ICE, indicating that Kolesnik is subject to possible deportation upon his release from the Department's custody.

Kolesnik has filed several prior personal restraint petitions collaterally attacking his judgment and sentence. See Nos. 40798-1-II; 49250-4-II, 49254-7-II, 52838-0-II, 54907-7-II, 56502-1-II. In January 2023, he filed the instant petition challenging the policies of the Department related to his immigration detainer.

ANALYSIS

To obtain relief through a personal restraint petition, the petitioner must demonstrate both that he " 'is restrained under RAP 16.4(b)[1] and that the restraint is unlawful under RAP 16.4(c).' " In re Pers. Restraint of Grantham, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298-99, 88 P.3d 390 (2004)). Where the petitioner has had no prior opportunity to raise the issues presented in their request for relief, they "need not make any threshold showing of prejudice." In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016). Restraint is unlawful if, for example, "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(6); see also In re Pers. Restraint of McMurtry, 20 Wn. App. 2d 811, 814, 502 P.3d 906 (2022).

---

[1] A petitioner is under restraint if "confined" as a result of a criminal judgment and sentence. RAP 16.4(b).

2

<u>Custody Classification Policy</u>

Kolesnik first claims he is unlawfully restrained because under the Department's policy, his immigration detainer disqualifies him from being assigned to a lower custody classification level.[2]  As a result, Kolesnik contends that the Department's policy unlawfully targets him based on his immigration status, in violation of RCW 43.17.425(1), a provision enacted in 2019 as a part of the "Keep Washington Working Act" (KWWA).[3]  The provision provides,

> [e]xcept as provided in subsection (3) of this section, no state agency, including law enforcement, *may use agency funds, facilities, property, equipment, or personnel to investigate, enforce, cooperate with, or assist in the investigation or enforcement of any federal registration or surveillance programs or any other laws, rules, or policies that target Washington residents solely on the basis of* race, religion, *immigration, or citizenship status*, or national or ethnic origin. This subsection does not apply to any program with the primary purpose of providing persons with services or benefits, or to RCW 9.94A.685.

(Emphasis added).

The Department does not dispute that Kolesnik is assigned to "Minimum Custody M13," the highest of three sub-levels of minimum custody, and under its

---

[2] According to Kolesnik, his current classification level does not allow him to participate in certain programs such as "camp," presumably referring to correctional camp crew, which performs forestry-related projects and is jointly operated by the Department of Corrections and the Department of Natural Resources.  See Correctional Camps Program, WASH. ST. DEP'T OF NAT. RES., https://www.dnr.wa.gov/CorrectionalCamps [https://perma.cc/8RLK-P944]

[3] The legislature enacted the "Keep Washington Working Act" in recognition of the fact that immigrants make up "over sixteen percent" of Washington's workforce and collectively make a "significant contribution to the economic vitality of this state," and to further the "substantial and compelling interest in ensuring the state of Washington remains a place where the rights and dignity of all residents are maintained and protected in order to keep Washington working." LAWS OF 2019, ch. 440, § 1.  The legislation is codified in multiple RCW chapters.  See ch. 10.93 RCW; ch. 43.10 RCW; ch. 43.17 RCW.

policy, his federal immigration detainer precludes his assignment to a lower custody level. Specifically, the Department's policy governing custody classification, Department of Corrections (DOC) Policy 300.380, provides that inmates will be assigned M13 classification if they are eligible for minimum custody according to their custody review score and their ERD is within six years, but they also have certain documented warrants in their electronic file, such as a detainer issued by ICE.[4] See DOC Policy 300.380(V)(D)(1)(a)(4)(c) (rev. Oct. 21, 2021) (Custody Level Designation and Eligibility, Minimum Custody M13) [https://perma.cc/2Y55-ZFPU].

But, as the Department points out, Kolesnik's argument ignores RCW 10.93.160(10), a separate provision of the KWWA, which authorizes the Department's custody classification policy. That provision states

> [a] state and local government or law enforcement agency may not deny services, benefits, privileges, or opportunities to individuals in custody, or under community custody pursuant to RCW 9.94A.701 and 9.94A.702, or in probation status, on the basis of the presence of an immigration detainer, hold, notification request, or civil immigration warrant, *except as required by law or as necessary for classification or placement purposes for individuals in the physical custody of the department of corrections*.

(Emphasis added). The Department contends that RCW 10.93.160(10) expressly allows the Department to manage the placement and classification of those in its physical custody by assigning all inmates who qualify for minimum

---

[4] Other types of warrants that require M13 custody classification under the same policy include in-state county detainers, out-of-state detainers within extradition limits, federal felony detainers, and juvenile detainers.

custody, but also have an ICE detainer, to the M13 custody level, rather than a lower sub-level of M12 or M11 custody.

We agree. To the extent that custody classification and placement is a service, benefit, privilege, or opportunity to incarcerated individuals, RCW 10.93.160(10) clearly allows the Department to assign individuals who have immigration detainers to a certain classification level. And contrary to Kolesnik's argument in reply to the Department's response to his petition, nothing in the statute requires the Department to demonstrate its "legitimate reason" for relying on immigration detainers as one criterion for classifying individuals at the highest sub-level of minimum custody. The statute places no limits or qualifications on the Department's ability to make classification and placement decisions that it deems necessary based on detainer or warrant status.

Moreover, it is well established that Washington prisoners have no constitutionally protected liberty interest in the assignment to a particular classification status. See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (liberty interest arising from state law or policies "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (citations omitted)); In re Pers. Restraint of Dowell, 100 Wn.2d 770, 773, 674 P.2d 666 (1984) (no liberty interest protected by due process under Washington State law in an inmate's classification status). As a general matter, Kolesnik's claim fails to appreciate that, even absent specific statutory authorization, prison administrators are accorded "wide-ranging deference" with regard to policies and

5

management practices that are designed to maintain internal order, security, and "to prevent escape or unauthorized entry." Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Department's classification policy does not implicate constitutional due process principles or violate the KWWA.

Release Date

Kolesnik next argues that he is subject to unlawful restraint because the Department intends to hold him in custody beyond his ERD "based solely on a civil immigration warrant, or an immigration hold request" in violation of the KWWA, specifically RCW 10.93.160(8).[5] The factual premise of Kolesnik's argument is that the Department will approve a release date of March 23, 2024, ten days before his current ERD of April 2, 2024. And because March 23 falls on a Saturday, and certain Department employees and officials have indicated that "ICE doesn't pick up on weekends" and the 10-day release period "will be adjusted" to allow for "pick-up on an extraditable detainer," Kolesnik claims he will be held for an additional 48 hours solely based on ICE's request.

But, Kolesnik's release date is not yet certain. As mentioned, the record is clear that Kolesnik's current ERD is April 2, 2024.[6] Kolesnik cannot establish that

---

[5] RCW 10.93.160(8) provides, in full,

An individual must not be taken into custody, or held in custody, solely for the purposes of determining immigration status or based solely on a civil immigration warrant, or an immigration hold request.

[6] The ERD is automatically adjusted if an incarcerated person loses good conduct time before their release as a result of a disciplinary proceeding. WAC 137-28-350.

he is currently unlawfully restrained based on his belief that the Department will hold him past a final release date, which has yet to be determined.

A sentence imposed under the Sentencing Reform Act of 1981, ch. 9.94A RCW, expires on its maximum expiration date, which is the date an incarcerated individual must be released if they serve the sentence imposed by the trial court without any reduction for early release. In re Gronquist, 192 Wn.2d 309, 316, 429 P.3d 804 (2018). An incarcerated person may be released before the maximum expiration date under an ERD, which is calculated based on the accrual of earned release time under RCW 9.94A.729. RCW 9.94A.728(1)(a). And the Department "may release" certain eligible individuals from confinement at "any time within 10 days" before the ERD. RCW 9.94A.728(1)(h); see DOC Policy 350.240 (rev. July 22, 2022) (Ten Day Release) [https://perma.cc/AG8T-7NSK].

As the Department points out, 10-day release is discretionary under the statute and may be denied if, for instance, the individual's release plan is not approved or not approved within the time required to provide legally-required notifications.[7] See DOC Policy 350.240(II)(A)(2)(f) [https://perma.cc/AG8T-7NSK] (sets forth bases to deny 10-day release). And fewer than the full 10 days may be approved in order to avoid release on a weekend or holiday, comply with

---

[7] According to the Department's response brief, filed on May 9, 2023, Kolesnik had not begun the release planning process. Release planning takes place six months before the individual's ERD. DOC Policy 350.200(IV)(G) (rev. Sept. 1, 2022) [https://perma.cc/H78N-LFRC] (outlining timing and steps of release planning). Records supplied by the Department also indicate that it will conduct audits to finalize the release date within 60 days of the ERD and the Department must issue notifications 35 days before release.

notification requirements, address community safety issues, facilitate transportation, or comply with specific requirements of the individual's release plan. See DOC Policy 350.240(III)(A)(1)-(3) [https://perma.cc/AG8T-7NSK] (sets forth bases to adjust the 10-day release). The Department may also deny a 10-day release after it was initially approved. See DOC Policy 350.240(II)(B) [https://perma.cc/AG8T-7NSK] (required steps if previously approved 10-day release is revoked). Therefore, we cannot assume that (1) Kolesnik's ERD will not change, that (2) he will be granted approval for release on March 23, 2024, the full 10 days authorized by statute and Department policy, and that (3) because that day falls on a Saturday, the Department will hold him in custody until Monday, March 25, 2024. Future projections cannot establish current unlawful restraint.[8]

We also reject the premise that, if Kolesnik remains in the Department's custody beyond March 23, 2024 (10 days before his current ERD), the Department will hold him in custody solely on the basis of an immigration detainer in violation of RCW 10.93.160(8). Kolesnik's custody is based on a sentence imposed under Chapter 9.94A RCW. He will remain lawfully in the Department's custody until that sentence expires on the maximum expiration

---

[8] Kolesnik argues in reply that his claim must be subject to review at this juncture even though a 10-day release has not yet been officially denied or approved because once that occurs, he will be unable to exhaust his administrative remedies before seeking review. The Rules of Appellate Procedure applicable to personal restraint petitions, RAP 16.1-16.15, do not include a specific exhaustion requirement. Instead, the rules provide that a petitioner may obtain relief by means of their personal restraint petition only if other remedies available are inadequate under the circumstances. RAP 16.4(d).

date, which is December 12, 2025.  See Gronquist, 192 Wn.2d at 326-27 (petitioner cannot establish unlawful restraint when held in custody on unexpired sentence).  "[I]t is well settled that an inmate does not have a liberty interest in being released prior to serving the full . . . sentence."  In re Pers. Restraint of Cashaw, 123 Wn.2d 138, 144, 866 P.2d 8 (1994) (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)).

Moreover, in granting a personal restraint petition, this court may only order removal of illegal restraint.  In re Pers. Restraint of Sappenfield, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999).  Thus, insofar as Kolesnik asks us to decide that the Department engages in a "routine practice" of implementing the 10-day release policy in a manner that assists immigration authorities, a ruling on the general legality of the Department's policy is beyond the scope of relief available by means of a personal restraint petition.[9]

---

[9] After the briefing was complete in this matter, Kolesnik moved to supplement his petition with a declaration indicating that he was recently informed of the Department's approval of his 10-day release.  This information still does not establish the factual premise of Kolesnik's argument—that his ERD will remain unchanged, that his release date will be set for March 23, 2024, and then adjusted to a later date to accommodate ICE.  And it does not change the analysis as to whether Kolesnik would be subject to unlawful restraint if he were to be held past a release date set in accordance with the Department's 10-day release policy.  Because the new facts alleged in Kolesnik's declaration are not necessary to fairly resolve the issues raised and no inequity results from reviewing the petition based on the evidence submitted by the parties in support of the briefing, the motion to supplement is hereby denied.  See RAP 9.11(a).

Legislative Intent

Finally, Kolesnik argues that the Department's policies related to federal immigration detainers are inconsistent with the legislative intent as expressed in another KWWA provision, RCW 43.10.315. RCW 43.10.315 requires the Attorney General's Office (AGO) to consult with appropriate stakeholders and "publish model policies, guidance, and training recommendations" consistent with the KWWA and "aimed at ensuring that state and local law enforcement duties are carried out in a manner that limits, to the fullest extent practicable and consistent with federal and state law, engagement with federal immigration authorities for the purpose of immigration enforcement." The statute further requires state and local law enforcement agencies to adopt policies consistent with the AGO's guidance or explain why the agency chooses not to do so. RCW 43.10.315 (1), (2).

This statute is a directive to the AGO, not the Department. And the language Kolesnik relies on about limiting state engagement with immigration authorities within the confines of state and federal law, is an overriding principle that applies to the AGO's formulation of guidance and policies. The statute applies to the Department only in that it obligates the Department to adhere to model policies or explain its decision not to do so, and Kolesnik does not contend that the Department has failed to follow the guidance or model policies without explanation.

Kolesnik mentions DOC policies governing custody classification and 10-day release, but as previously explained, these policies do not contravene the

provisions of the KWWA.  They are also consistent with the express legislative intent of the statute.  See LAWS OF 2019, ch. 440, § 1 (recognizing the State's interest in protecting the rights and dignity of individuals working in Washington State).  And Kolesnik fails to establish that these or any other Department policies conflict with particular model policies promulgated by the AGO.[10]

Kolesnik also argues that the law does not require the Department to notify immigration officials in advance of an inmate's release and therefore, the Department must be required to enact a policy that prohibits its employees and officials from doing so.  The KWWA does not specifically prohibit the Department from disclosing an inmate's release date, and certain provisions of the KWWA restricting disclosure of nonpublicly available personal information and providing certain information in response to requests from federal immigration authorities, do not apply to individuals in the Department's custody.[11]  RCW 10.93.160(15).  But perhaps more importantly, Kolesnik fails to allege, much less establish, that the absence of a Department policy subjects him to unlawful restraint.  Again,

---

[10] The AGO's guidance and model policies are accessible to the public on its website. See WASH. STATE OFF. OF ATT'Y GEN., GUIDANCE CONCERNING IMMIGRATION ENFORCEMENT pt. III (Apr. 2017), https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/AGO%20Immigration%20Guidance.pdf [https://perma.cc/9735-JZGK].

[11] For the first time in his reply brief, Kolesnik asserts that, not only is it lawful for the Department to ignore notification requests from federal immigration authorities but the Department's compliance with such requests violates RCW 43.17.425(1).  Generally, claims raised for first time in a reply brief are too late for this court's consideration.  See In re Pers. Restraint of Peterson, 99 Wn. App. 673, 681, 995 P.2d 83 (2000) (declining to address issue raised in reply to which respondent had no opportunity to respond).  Accordingly, we decline to address this issue.

removal of unlawful restraint is the only relief this court can provide in this matter. Sappenfield, 138 Wn.2d at 595.

Kolesnik has failed to demonstrate that he is entitled to relief. Accordingly, we deny his petition.

_Smith, C.J._

WE CONCUR:

_Feldman, J._          _Brennan, J_