FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 APR 23 AM 11: 50



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| IN RE THE PERSONAL RESTRAINT | ) | |
|---|---|---|
| | ) | No. 76249-4-I |
| OF | ) | |
| | ) | DIVISION ONE |
| | ) | |
| | ) | |
| FRED STEPHENS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner | ) | FILED: April 23, 2018 |

SPEARMAN, J. — Fred Stephens filed a personal restraint petition (PRP) arguing that the Washington State Department of Corrections (DOC) miscalculated his earned release time based on a methodology that is contrary to its own policies. He further contends that DOC violated the constitutional prohibition on ex post facto laws by calculating his early release date based on a policy it enacted in 2014, rather than the 1996 version of the policy. We conclude that DOC's methodology for calculating Stephens' earned release date was within the agency's discretion, and that changes in DOC's policy do not raise ex post facto concerns. Accordingly, we deny the petition.

## FACTS

Fred Stephens was convicted of first degree murder while armed with a deadly weapon. The crime occurred in March 1995. The high end of the range for this crime was 320 months of incarceration. At that time, a finding that an offender committed a violent offense while armed with a deadly weapon required the sentencing court to

add 12 months to the standard range. See former RCW 9.94A.310(3) (1995)[1].

Accordingly, on February 5, 1996, Stephens was sentenced to 332 months.

In April 2015, Stephens learned for the first time that DOC had calculated his early release date as October 26, 2018. Stephens asserted that his early release date should be September 18, 2018.

At issue is DOC Policy No. 350.100 (Earned Release Time), which establishes rules under which DOC awards earned release time to incarcerated offenders. Earned release time may be granted for "good behavior and good performance" while the offender is incarcerated. RCW 9.94A.729(1)(a). At the time Stephens was sentenced in 1996, former RCW 9.94A.150(1) (1996)[2] capped earned early release time awards for serious violent offenses, including that committed by Stephens, at fifteen percent. The fifteen percent cap for inmates sentenced at the time Stephens committed his crime remains in effect today. RCW 9.94A.729(3)(b). This fifteen percent cap is reflected in the 1996 and 2014 versions of DOC Policy 350.100.

DOC informed Stephens that it calculated his release date as follows based on the 2014 version of Policy 350.100. On February 6, 1996, Stephens was sentenced to 332 months of confinement, which equals 10,104 days. DOC then subtracted 330 days for jail time served, and 58 days for good conduct, leaving 9,716 days remaining on his sentence. Next, based on the fifteen percent cap on earned release time, DOC determined that if Stephens were to earn all potential early release credits he would be required to serve eighty-five percent of the 9,716 days remaining on his sentence,

---

[1] Recodified as RCW 9.94A.510, Laws of 2001, Ch. 10, §6.

[2] Recodified as RCW 9.94A.728, Laws of 2001, Ch. 10, §6

equaling 8,258 days. This would yield an early release date of September 16, 2018. However, DOC determined that Stephens lost 39.47 days of earned release time due to "[n]ot programming or [w]orking" from March 1, 1997 to January 1, 1999. DOC therefore added 39.47 days to the original early release date of September 16, 2018, yielding an early release date of October 26, 2018. Petitioner's Opening Brief, Appendix 7.

On December 21, 2016, Stephens filed a pro se personal restraint petition alleging that the retroactive application of the 2014 version of DOC Policy 350.100 changed the methodology for calculating earned release time credits, thereby extending his early release date in violation of the ex post facto clause of the Washington Constitution and DOC's own policies. This court assigned counsel to Stephens and referred his petition to a panel for consideration on the merits.

## DISCUSSION

"A PRP challenging a decision from which the offender has had no previous or alternative avenue for obtaining judicial review does not require the same heightened threshold showing as other PRPs. To be entitled to relief, the petitioner need only show he or she has been restrained and the restraint was unlawful." In re Personal Restraint Petition of Silas, 135 Wn. App. 564, 569, 145 P.3d 1219 (2006), (citing In re Pers. Restraint of Stewart, 115 Wn. App. 319, 332, 75 P.3d 521 (2003)). Stephens challenges his restraint on two separate grounds: DOC's application of its early release policy, and the constitutional prohibition on ex post facto laws.

## Application of Policy

Stephens challenges the methodology DOC used to arrive at an earned early release date of October 26, 2018, based on the 2014 version of DOC Policy 350.100. He contends that DOC's calculation method is contrary to its own policies. According to Stephens, his early release date should be September 16, 2018 regardless of whether the 1996 or 2014 version of the policy is applied.[3]

Stephens acknowledges that under RCW 9.94A.729(3)(b) and both the 1996 and the 2014 versions of Policy 350.100, earned early release time cannot exceed fifteen percent of the sentence imposed for a serious violent offense committed after July 1, 1990. But he points out that both policies also allow earned time and good conduct time may be accumulated on a specified pro-rata basis.[4] And for model inmates serving lengthy sentences for class A felony crimes, it was theoretically possible to earn early release time credits equivalent to a sentence reduction of eighteen percent. Indeed, as applied to Stephens, the accrual rates under both the 1996 and 2014 policies would accomplish that result.

Stephens contends that in calculating his release date, to the extent there is any applicable loss for failure to earn early release time, it should be deducted from

---

[3] At the time Stephens committed his crime and was sentenced, DOC was operating under the 1990 version of Policy 350.100. See Pet. Opening Br., App. 48. Stephens acknowledges this, but nevertheless relies on the 1996 version of the policy because it provides specific rates by which to calculate earned release time. See Pet. Opening Br. at 4, n.2. Although it appears to us that the 1990 policy is applicable here, apparently DOC concurs in Stephens' approach, so we do not address it.

[4] The 1996 version as applied to Stephens provided that good conduct time is accrued at the rate of 3.65 days per 30-day period and earned time is accrued at the rate of 1.77 days per 30-day period. The 2014 version as applied to Stephens provided that good conduct time is earned at a flat rate of 10 percent, and that earned time is calculated at a rate of 1.76 days per calendar month.

the eighteen percent sentence reduction he claims to have accrued under the accrual rates set forth in the policies. Using that methodology, Stephens would still have earned early release time in excess of fifteen percent. Thus, when the statutory cap is applied, Stephens is still entitled to the full fifteen percent reduction despite his failure to participate in programming. Under Stephens' analysis, the resulting release date is September 16, 2018.

Regardless of the accrual rates set forth in either the 1996 or 2014 versions of Policy 350.100, DOC asserts that neither RCW 9.94A.729(3)(b) nor the policies permit an inmate convicted of a class A serious violent offense to earn in excess of fifteen percent earned early release time. Accordingly, DOC's calculation methodology uses the fifteen percent statutory cap as a baseline. In the event that an inmate forfeits or fails to earn early release time, DOC extends the actual early release date by the amount of lost or unearned time according to the pro-rata formula. Using DOC's methodology, Stephens' release date is October 26, 2018.

We agree with DOC. DOC has the statutory authority to reduce an offender's term of incarceration by earned release time based on procedures developed and adopted by the agency having jurisdiction over the offender. RCW 9.94A.729(1) (formerly RCW 9.94A.150(1)). Similarly, under RCW 72.09.130, DOC is authorized to "adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges." DOC has "'broad discretion to determine and enforce the procedures by which an offender will be allowed to earn a reduction in his sentence.'" In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 56, 375 P.3d 1031 (2016)

(quoting In re Pers. Restraint of Pullman, 167 Wn.2d 205, 214, 218 P.3d 913 (2009)). This system allows inmates to earn sentence reductions in accordance with DOC policies and legislative restrictions, such as the fifteen percent cap on aggregate earned early release time for inmates such as Stephens. The statute does not create a right to a specific method for calculating early release credit. See In re Pers. Restraint Petition of Fogle, 128 Wn.2d 56, 61, 904 P.2d 722 (1995) (interpreting former RCW 9.94A.150(1).

Stephens asserts that DOC's methodology for calculating his early release date was not based on a fair reading of its own policies. He notes that Policy 350.100 does not specify that lost time will be added onto the earliest possible release date allowed by statute. However, there is nothing in the policy or authorizing statutes mandating Stephens' preferred method. Rather, the legislature granted DOC the discretion to develop a policy for granting early release credits, limited by a maximum allowable sentence reduction. DOC's methodology falls within this permissible exercise of discretion. "Correctional agencies are not required to grant the maximum allowable earned release time." Stuhr, 186 Wn.2d at 53 (citing Pullman, 167 Wn.2d at 214).

Nor does DOC's methodology render the Policy's system of accumulating credits on a pro-rata basis superfluous. DOC's methodology does not disregard the pro-rata calculation of early release time, as Stephens claims it does. Rather, it gives inmates the opportunity to earn credits on a pro-rata basis up to the statutory maximum amount of early release time, with that amount reduced on the same pro-rata basis by the amount of credits not earned. DOC's methodology incentivizes good behavior in prison by rewarding ideal inmates with the opportunity to be released at

the earliest possible opportunity determined by the legislature, and penalizing those who decline to fully utilize this opportunity.

Stephens further argues that Policy 350.100 is ambiguous and, under the rule of lenity, the ambiguity should be construed against DOC. But statutes authorizing earned early release credits do not create a right to a specific calculation methodology. Fogle, 128 Wn.2d at 61. We decline Stephens' invitation to apply the rule of lenity where the maximum early release time is unambiguously capped by statute at fifteen percent, and DOC's Policy reflects the cap. Former RCW 9.94A.150(1); RCW 9.94A.729(3)(b). "That there are multiple ways to comply with a statute does not make the statute ambiguous." In re Pers. Restraint Pet. of King, 146 Wn.2d 658, 665-66, 49 P.3d 854 (2002).

### Ex Post Facto.

Stephens argues that DOC violated the constitutional prohibition on ex post facto laws by applying the 2014 version of Policy 350.100 to a crime he committed in 1995. U.S. Const. art. 1 §10; Wash. Const. art. I, §23. The ex post facto clause "prohibits the State from enacting laws that retroactively increase the punishment associated with a crime after its commission." In re Personal Restraint of Dyer, 164 Wn.2d 274, 292, 189 P.3d 759 (2008) (citing State v. Pillatos, 159 Wn.2d 459, 475, 150 P.3d 1130 (2007)). A law is unconstitutionally ex post facto if it is (1) retrospective and (2) disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). "[T]he sole determination of whether a law is 'disadvantageous' is whether the law alters the standard of punishment which existed

7

under prior law." State v. Ward, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994) (citing In re Powell, 117 Wn.2d 175, 188, 814 P.2d 635 (1991)).

Stephens first argues that the 2014 Policy violates ex post facto because it lessens the amount of good conduct time and earned time he could earn on a pro-rata basis as compared with the 1996 Policy. But the fifteen percent cap on early release time continues to apply to inmates in Stephens' position, just as it did when he committed the crime in 1995. He could not earn early release credits beyond this cap, which is why the methodology that Stephens advocates results in the same early release date under the 1996 and the 2014 versions of the Policy. The 2014 Policy does not retrospectively disadvantage Stephens.

Stephens also argues that DOC violated ex post facto by penalizing him 40 days of earned time for failure to program or work in 1997 and 1998. At the time Stephens was sentenced, Initiative 593, the Persistent Offender Accountability Act (known as the "three strikes law") made offenders in his position ineligible for early release from prison during the mandatory minimum sentence term. Former RCW 9.94A.120 (1996). Accordingly, DOC's 1996 Policy provided that offenders serving the mandatory minimum term of their sentence "are not eligible to earn earned time credits and therefore may not lose earned time credits." In State v. Cloud, 95 Wn. App. 606, 617-18, 976 P.2d 649 (1999), this court held that Initiative 593 was unconstitutional on procedural grounds, and directed the trial court to credit the defendant, who was not a persistent offender, with good time credit he had already earned.

Pursuant to Cloud, DOC reinstated the ability of inmates to earn or lose early release credits during the mandatory minimum portion of their sentence. Accordingly, when calculating Stephens' early release date based on the 2014 Policy, DOC granted Stephens the earned time he earned during the mandatory minimum portion of his sentence, as well as increasing his early release date by 40 days for failure to program.

Stephens argues that penalizing him with 40 days lost earned time violates ex post facto because he was statutorily barred from losing earned time when he made the decision not to program or work. However, the ex post facto clause is a limitation on the power of the legislative branch, and does not apply to the judicial branch. Rogers v. Tennessee, 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). A judicial decision, not a legislative action, restored Stephens' ability to earn early release credits. Ex post facto analysis does not apply to this claim.[5]

Even if ex post facto applied, Stephens has not shown that he was disadvantaged. At the time Stephens committed the crime and was sentenced, he was statutorily ineligible to earn or lose early release credits during the mandatory minimum portion of his sentence. He is now eligible to reap the potential benefits of this change by claiming the credits that he earned during this time. At the same time, Stephens wants to avoid the consequences of his failure to program or work in 1997 and 1998. Stephens cannot receive credit for time that he did not earn.

---

[5] DOC also advances a novel argument that the ex post facto rule does not apply to any of its policies because they do not have the force of law. But the Washington Supreme Court applied ex post facto analysis to an inmate's challenge to a DOC policy regarding early release. In re Pers. Restraint Pet. of Forbis, 150 Wn.2d 91, 74 P.3d 1189 (2003). DOC cites no cases contrary to this established precedent.

In sum, DOC's methodology of calculating Stephens' early release date was not contrary to its policies and did not violate the ex post facto clause. Stephens' petition is denied.

WE CONCUR

Spearman, J.

Leach, J.

Cox, J.