**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br>DYLAN RAYMOND BECKER,<br><br>                 Petitioner. | No. 84244-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

HAZELRIGG, J. — Dylan Raymond Becker[1] seeks relief by way of a personal restraint petition. He contends his restraint is unlawful because the Department of Corrections is precluding him from participating in the Sex Offender Treatment and Assessment Program based on an arbitrary and capricious policy. He additionally argues he is being denied visitation with his minor son in violation of his fundamental liberty interest in parenting his child. We grant relief as to the first issue but deny it as to the second.

FACTS

On January 9, 2020, Dylan Raymond Becker was convicted of rape of a child in the first degree and sentenced under the special sex offender sentencing

---

[1] As the initial petition notes, Raymond Becker's name appears in the record as Raymond-Becker and Raymond Becker. We use the latter spelling to reflect the petitioner's brief and the manner by which it is set out in the judgment and sentence.

No. 84244-7-I/2

alternative (SSOSA).[2]  The court imposed an exceptional sentence of 93 months based on several aggravating factors; it ordered Raymond Becker to serve 48 months in prison with the remainder of the time suspended.[3]  After beginning his prison term, Raymond Becker requested to participate in the Sex Offender Treatment and Assessment Program (SOTAP).  The "program provides risk assessment, prison-based sexual offense treatment," and "community-based treatment" for "adult sex offenders."  A clinician facilitates twice weekly sessions, where group members "reflect upon their values and how past behaviors are incongruent with their values," "verbalize and share feelings and thoughts related to risk and develop and practice skills to mitigate risk."  However, the Department of Corrections (DOC) denied his request because he is incarcerated pursuant to a SSOSA sentence.

From the start of his time in prison until September 2021, Raymond Becker had several in-person visits with his son O, who is a minor but not involved in the crime of conviction.  Elizabeth Hainline, the Statewide Visitation Specialist for DOC, testified that Raymond Becker was required to have a professional visitation supervisor for in-person visits with his son from the

---

[2] RCW 9.94A.670.

[3] Under chapter 9.94A RCW, a sentencing court may "suspend the sentence of a first-time sexual offender if the offender is shown to be amenable to treatment and instead require that the offender be released into community custody and receive outpatient or inpatient treatment." State v. Wheeler, 14 Wn. App. 2d 571, 575, 474 P.3d 583 (2020).  The court "must impose" "[a] term of confinement of up to twelve months or the maximum term within the standard range," unless an aggravating circumstance is found, in which case the court may impose a greater term of confinement.  RCW 9.94A.670(5)(a).  The court must also order treatment for up to five years as well as a variety of "prohibitions and affirmative conditions relating to the known precursor activities or behaviors."  RCW 9.94A.670(5)(c), (d).  If the individual violates the conditions of their sentence or "fails to make satisfactory progress in treatment," the SSOSA may be revoked and the original sentence of incarceration imposed.  Wheeler, 14 Wn. App. 2d at 575-76.

No. 84244-7-I/3

beginning of his incarceration, but "due to an internal error," this requirement was not communicated to Raymond Becker's wife (O's mother). Once the error was discovered, Raymond Becker's wife was notified and the requirement was enforced.

Raymond Becker filed a personal restraint petition (PRP), seeking relief from both the decision denying his request to participate in SOTAP and the requirement of a professional supervisor for any in-person visitation with O.

ANALYSIS

An individual may seek relief from unlawful restraint by filing a PRP. In re Pers. Restraint of Sandoval, 189 Wn.2d 811, 820, 408 P.3d 675 (2018). Where the petitioner has not had a prior opportunity to raise the issues presented in their request for relief, they "need not make any threshold showing of prejudice," but instead demonstrate "that [they are] under an unlawful restraint as defined by RAP 16.4." In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016). A restraint is unlawful if "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(6); see also In re Pers. Restraint of McMurtry, 20 Wn. App. 2d 811, 814, 502 P.3d 906 (2022).

I. DOC Policy 570.000(I)(B)(1)

Raymond Becker first alleges his restraint is contrary to Washington law because DOC Policy 570.000(I)(B)(1) is arbitrary and capricious and, therefore, unenforceable. "A decision made by an agency is 'arbitrary and capricious' only

-3-

No. 84244-7-I/4

if it is 'willful and unreasoning action in disregard of facts or circumstances.'" In re Pers. Restraint of Dyer, 143 Wn.2d 384, 395, 20 P.3d 907 (2001) (internal quotation marks omitted) (quoting United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wn.2d 355, 365, 687 P.2d 186 (1984)).

DOC Policy 570.000(I)(B)(1) categorically precludes SSOSA offenders from participating in SOTAP, definitively stating, "Individuals sentenced to the Special Sex Offender Sentencing Alternative per RCW 9.94A.670 are not eligible to participate." Raymond Becker argues it is illogical to prohibit offenders who have committed sex offenses which render them eligible for a SSOSA and been found to be amenable to treatment from engaging in sex offender treatment while incarcerated. DOC responds that the policy is supported because SOTAP does not meet the statutory requirements for sex offender treatment for SSOSA offenders.

RCW 9.94A.670(13) requires that "[e]xaminations and treatment ordered pursuant to this subsection shall only be conducted by certified sex offender treatment providers or certified affiliate sex offender treatment providers under chapter 18.155 RCW."[4] SOTAP providers do not meet this definition because not all SOTAP providers have the requisite certifications. Cathi Harris, DOC Director of Sex Offender Treatment and Assessment Programs, testified that this "precludes the Department from providing such treatment to individuals on SSOSA sentences."[5] In reply, Raymond Becker argues that he is not attempting

---

[4] Several exceptions are listed, none of which are pertinent to our analysis in this case.
[5] While Raymond Becker does not challenge this statement, it does appear to be a legal conclusion provided by a non-attorney witness.

to receive treatment in order to satisfy any of the treatment requirements of his SSOSA sentence, but simply to engage in additional treatment while incarcerated. As Raymond Becker correctly notes, under DOC policy, an individual need not be currently serving a sentence pursuant to a sex offense conviction to partake in SOTAP: an individual who previously served a sentence for a sex offense may participate, and individuals who self-report "having committed a sex offense(s) that has not led to a charge/conviction, or who believe they may commit a sex offense(s) upon release" may request to join the program. Under the plain language of the policy, an individual who has never committed a sex offense but simply believes they might commit one upon release is not precluded from participating, but any individual who is serving a sentence pursuant to a SSOSA may never enroll. In short, DOC at least theoretically welcomes those who have never been convicted of, or perhaps never committed, sex offenses into its treatment program aimed at providing treatment opportunities for adults convicted of sex offenses, but prohibits certain convicted sex offenders from participation because they are serving a prison term pursuant to a statutory sentencing alternative that expressly emphasizes treatment as a means of preventing recidivism. This is willful and unreasoning action disregarding the relevant facts and circumstances.

Raymond Becker additionally contends the policy has failed to adapt to amendments to SSOSA statutes. DOC Policy 570.000 first became effective in 1991. When the DOC policy was enacted, a judge could only sentence an

No. 84244-7-I/6

individual to "up to six months of confinement" under the SSOSA statute.[6]  In 2004, the statute was amended to permit judges to "order the offender to serve a term of confinement greater than twelve months or the maximum term within the standard range based on the presence of an aggravating circumstance."[7] Because a sentence of one year or less is served in a county jail and a sentence of more than one year is served in a state prison,[8] an individual serving an initial SSOSA sentence in 1991 would not have been confined in a DOC prison facility. Rather, any individual in a DOC facility pursuant to a SSOSA sentence during that time would only be those serving the remainder of their suspended sentence after revocation.  Raymond Becker argues that DOC has incidentally combined individuals serving the initial term of a SSOSA sentence and those on revocation time into the same category and precluded both from participating in SOTAP, rather than updating the policy to reflect the ability of judges to sentence individuals to serve the first part of their SSOSA sentence in a DOC facility.

The policy is also contrary to the intent of our legislature in establishing a correctional system.  RCW 72.09.010 provides a statement of legislative intent, stating the comprehensive "system should be designed and managed to provide the maximum feasible safety for the persons and property of the general public, the staff, and the inmates."  RCW 72.09.010(1).  The system should also "positively impact offenders by stressing personal responsibility and

---

[6] LAWS OF 1990, ch. 3, § 705(7)(a)(ii)(B).
https://leg.wa.gov/codereviser/documents/sessionlaw/1990pam1.pdf.
[7] LAWS OF 2004, ch. 176, §4(4)(a).   https://apps.leg.wa.gov/documents/billdocs/2003-04/Pdf/Bills/Session%20Laws/House/2400-S.SL.pdf.
[8] RCW 9.94A.190(1).

No. 84244-7-I/7

accountability and by discouraging recidivism." RCW 72.09.010(3). The legislature additionally intends for the system to "reflect the values of the community," which includes "[p]roviding opportunities for self improvement. All individuals should have opportunities to grow and expand their skills and abilities as to fulfill their role in the community." RCW 72.09.010(5)(c). Finally, the statute provides that "[s]ince most offenders return to the community, it is wise for the state and the communities to make an investment in effective rehabilitation programs for offenders and the wise use of resources." RCW 72.09.010(6). DOC Policy 570.000(I)(B)(1) contradicts these statements of legislative intent by precluding all individuals serving an initial SSOSA sentence, who have necessarily been found to be amenable to treatment[9] and who will return to the community,[10] from participating in treatment designed to "provide opportunities for offenders to learn the attitudes, thinking skills, and behaviors necessary to manage their risk of future sexual offenses."

At oral argument before this court, DOC argued Policy 570.000(I)(B)(1) should be upheld as a discretionary decision by DOC about how to best utilize its resources.[11] It also argued striking the provision would create an unnecessary administrative burden. However, removing a categorical barrier to participation does not remove DOC's discretion as to which individual inmates may participate in the program based on resources available at the time of each request.

_____

[9] RCW 9.94A.670(4).
[10] RCW 9.94A.670(5)(a) ("In no case shall the term of confinement exceed the statutory maximum sentence for the offense").
[11] In re Pers. Restraint Petition of Raymond Becker, No. 84244-7-I (Jan. 26, 2023), at 17 min., 7 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023011361/?eventID=2023011361.

-7-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84244-7-I/8

Further, both parties agree that Raymond Becker seems to be the only inmate impacted by this categorical bar currently, and in the nearly two decades since the SSOSA statute was amended.[12] DOC failed to articulate what additional burden it would have in investigating whether an inmate is serving more than 12 months in prison pursuant to a SSOSA compared to the current burden of determining whether an interested applicant qualifies for the program, particularly in light of the apparently agreed upon fact that this administrative hardship would be the result of applications from a highly unique sentencing exception.[13] This fatally undercuts DOC's contention that striking the provision would be unduly burdensome in terms of its program resources.

DOC provides no logical reasoning for the unqualified exclusion of those serving SSOSA sentences. Without any consideration of the facts and circumstances of each inmate seeking to participate in SOTAP, DOC Policy 570.000(I)(B)(1) is arbitrary and capricious to the extent it categorically bars any individual serving a SSOSA sentence from admission. We reiterate that invalidating this portion of the policy as arbitrary and capricious has no impact on DOC's discretion to admit an individual offender into the program.

We grant Raymond Becker's petition as to this issue and strike the relevant language of the policy.

---

[12] In re Pers. Restraint Petition of Raymond Becker, No. 84244-7-I (Jan. 26, 2023), at 6 min., 37 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023011361/?eventID=2023011361.

[13] Logic dictates that individuals serving a sentence pursuant to a SSOSA are not the only inmates who might have less than 12 months of their period of incarceration remaining at the time they request to join SOTAP.

-8-

No. 84244-7-I/9

II.     DOC Conditions on In-Person Visits

Raymond Becker next contends his restraint is contrary to Washington law and to the United States Constitution because DOC has disallowed visitation with his son, O.  His claim fails on both bases because DOC has not precluded visitation; rather, DOC has allowed in-person visits with O, so long as a professional supervisor is present, or visitation through a video call with any approved visitor supervising (including Raymond Becker's wife).[14]  Raymond Becker has two avenues for visitation with O, subject to conditions by DOC which are reasonably related to penological interests.  His claim fails on this basis.

Granted in part and denied in part.

_____

WE CONCUR:

_____     _____

---

[14] Raymond Becker also argues that language in the judgment and sentence expressly permits visits with O.  He is correct that the language is permissive; it does not order DOC to do anything other than to give "special consideration" to "permit contact" between Raymond Becker and his son.  Again, DOC does permit contact, albeit with restrictions relating to the unique safety concerns of a child's interaction with a carceral setting.