**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 39495-6-III |
| | ) | |
| JOSHUA KELLY PINNEY, | ) | ORDER GRANTING |
| | ) | MOTION TO PUBLISH |
| Petitioner. | ) | |
| | ) | |

THE COURT has considered a motion filed by the respondent, Washington State

Department of Corrections, to publish our September 12, 2023, opinion; and the record

and file herein;

IT IS ORDERED that the motion to publish is granted. The opinion filed by the

court on September 12, 2023, shall be modified on page one to designate it as a published

opinion and on page 14 by deletion of the following language:

> A majority of the panel has determined this opinion will not be
> printed in the Washington Appellate Reports, but it will be filed for public
> record pursuant to RCW 2.06.040.

PANEL: Judges Siddoway, Lawrence-Berrey and Staab

FOR THE COURT:

_____
GEORGE B. FEARING
Chief Judge

**FILED**
**SEPTEMBER 12, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 39495-6-III |
| | ) | |
| JOSHUA KELLY PINNEY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

SIDDOWAY, J.P.T.* — Joshua Pinney filed a personal restraint petition (PRP)
asking us to order the Washington State Department of Corrections (WDOC[1]) to clear a
2014 warrant for a community custody violation and release him from supervision or to
order it to conduct a remote hearing on the alleged violation. He fails to demonstrate
grounds for the requested relief or that a remedy he seeks is appropriate. We dismiss the
petition.[2]

---

\* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time
argument was held on this matter. She is now serving as a judge pro tempore of the court
pursuant to RCW 2.06.150.

[1] We stray from our usual use of the acronym "DOC" because the Arizona
Department of Corrections has a role in this matter as the prison system whose policies
are the immediate cause of some of Mr. Pinney's alleged losses of liberty. We will refer
to it as "ADOC."

[2] Mr. Pinney's PRP is arguably moot. The Arizona prison website reports that he
obtained early release to community supervision within days of the panel hearing his
appeal without oral argument. Neither party has suggested that we dismiss the appeal as
moot, however, and given that the matter has been fully briefed and any violation of his
community supervision in Arizona could result in additional confinement, reviving the
issues, we choose to address the petition on the merits.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39495-6-III
*In re Pers. Restraint of Pinney*

FACTS AND PROCEDURAL BACKGROUND

After pleading guilty to second degree identity theft charges in Pierce County and King County in 2013, Joshua Pinney was released from confinement in May 2014 and began serving a 12-month terms of community custody that had been imposed in both cases.  Within three days of his release, Mr. Pinney failed to report to his community custody officers (CCOs).  He was sanctioned and taken into custody from June 13-14.  On the day of his release, he committed another, unspecified violation.  He was then taken into custody for one week and released on June 25.  He was due to report to one of his CCOs the following day, June 26, but instead absconded to the state of Arizona.  WDOC issued a secretary's warrant for his rearrest, which remains active.

By December 2014, Mr. Pinney had committed crimes in Arizona; he was convicted in 2015 of theft of means of transportation, aggravated taking of identity, and forgery.  He was sentenced in September 2015 to a total of nine years and six months of confinement.

At some point, the Arizona Department of Corrections (ADOC) became aware of the warrant issued by WDOC.  Because the WDOC warrant is nonextraditable from Arizona, ADOC treated it as a felony hold.

In November 2021, a lawyer for Mr. Pinney reached out to WDOC, explaining that Mr. Pinney was then in an Arizona prison and that the WDOC warrant was "preventing him from progressing through the Arizona system to lesser levels of

2

No. 39495-6-III
*In re Pers. Restraint of Pinney*

supervision and keeping him from accessing certain programs." PRP, Attach. G at 1. He said he was attempting to assist Mr. Pinney with the warrant and explained,

> My hope is that we can schedule him for a hearing on his violation, waive his presence, and resolve this in some way such that the warrant is cleared. In a perfect world on our end, he would be able to simply serve out his [Washington] community custody time in Arizona [Department of Corrections].

*Id.* In further communications, the lawyer was directed to community custody supervisor Christopher Muhs.

Initially, Officer Muhs responded that WDOC would not address the warrant via an administrative hearing until Mr. Pinney completed his Arizona sentence and returned to Washington. But at some point in early 2022, WDOC's position changed and Officer Muhs and other WDOC personnel began communicating with authorities in ADOC about facilitating a virtual hearing for Mr. Pinney. Those efforts came to a halt in March 2022 when WDOC became aware that contrary to what they had been led to believe about Mr. Pinney's unserved community custody—that it was 15 days—he had much more prison return time in Washington, which WDOC asserted made him ineligible for a telephonic hearing. When Mr. Pinney's lawyer pressed WDOC for a copy of the policy, he was told that the policy had not been codified.

Mr. Pinney's lawyer's continued to communicate with WDOC in an effort to persuade it that its refusal to facilitate a virtual hearing or clear the warrant was violating Mr. Pinney's constitutional and statutory rights. WDOC responded that Washington law

3

No. 39495-6-III
*In re Pers. Restraint of Pinney*

did not impose a time frame within which it was required to address Mr. Pinney's

violative behavior.  It conceded that due process would require WDOC to conduct a

hearing "promptly" and "within an immediate time" once it charged him with the

violation, but there was no requirement that he be immediately charged, especially since

he was is in custody on another matter.  It cited the United States Supreme Court's

decision in *Moody v. Daggett*, 429 U.S. 78, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976), as

support.  Mr. Pinney replied that unlike the offender in *Moody*, he was suffering a loss of

liberty, but WDOC was not persuaded.

In May 2022, Mr. Pinney filed a PRP with Division Two of this court.  In

January 2023, the acting chief judge of that court referred the petition for a decision

by a panel.  In February 2023, the PRP was administratively transferred to this division.

A panel considered the PRP without oral argument.

ANALYSIS

To obtain relief through a PRP, a petitioner must establish that he is under a

"restraint" and that the restraint is unlawful for one or more of the reasons identified in

RAP 16.4(c).  RAP 16.4(a).  A petitioner is under restraint if he has limited freedom

because of a court decision, is confined or subject to imminent confinement, or is

under some other disability resulting from a judgment or sentence in a criminal case.

RAP 16.4(b).  Mr. Pinney identifies his grounds for relief as follows:

4

No. 39495-6-III
*In re Pers. Restraint of Pinney*

> [A] Washington DOC warrant for community custody violation is limiting my liberty while I serve a sentence in Arizona DOC, for which Washington DOC is denying me a hearing in violation of [the] [United States] and Washington Constitutions, and RCW 9.94A.737.

PRP at 2-3. The statute cited—RCW 9.94A.737(1)—provides that if an offender is accused of violating a condition or requirement of community custody, WDOC "shall address the violation behavior."

While a petitioner who has had a prior opportunity to judicially appeal the issues presented in his PRP must make a threshold showing of prejudice, that requirement does not apply to circumstances such as this, where there has been no prior opportunity for judicial review. *In re Pers. Restraint of Stuhr*, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016).

I.      NO DUE PROCESS VIOLATION IS SHOWN[3]

Mr. Pinney traces his due process claim to *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), a case involving the due process owed parolees who face a revocation of parole. The Supreme Court observed that parole is an established variation of imprisonment, arising after the end of a criminal prosecution, and that the liberty of a parolee is indeterminate. *Id.* at 477, 480, 482. Nevertheless, the Court recognized that parole "includes many of the core values of unqualified liberty and

---

[3] Mr. Pinney invokes the Washington Constitution as providing an additional ground for relief but his briefing makes no reference to state constitutional authority nor does it conduct any state constitutional analysis, so we undertake none of our own. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (assigned error is waived if not supported by argument).

No. 39495-6-III
*In re Pers. Restraint of Pinney*

its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. It found parole to be a "valuable" liberty, which "must be seen as within the protection of the Fourteenth Amendment [to the United States Constitution]." *Id.*

The Court characterized a revocation decision as a two-step process in which it is necessary to determine first, whether the parolee has in fact acted in violation of one or more conditions of his parole and, second, what to do about the violation. *Id.* at 479-80. The second step is predictive and discretionary. *Id.* at 480. The Court held that what is required by due process is "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484.

The Court identified minimum requirements of due process, among them being a preliminary hearing after the parolee is arrested and detained, for the purpose of determining whether there is probable cause or a reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. It held that due process would seem to require that this preliminary inquiry "be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." *Id.* at 485.[4]

---

[4] Elaboration on the requirements of the preliminary hearing appears at 408 U.S. at 485-87.

No. 39495-6-III
*In re Pers. Restraint of Pinney*

Also required, but with "typically a substantial time lag," is the hearing at which the eventual determination by the parole board whether to revoke parole is made. *Id.* The Court held that "the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," and "[a] lapse of two months . . . would not appear to be unreasonable."[5]  *Id.* at 488.

In the five decades since *Morrissey*, federal and state courts have extended its principles to analogous situations involving probationers, *see Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); felons sentenced under the special sex offender sentencing alternative, *see State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999); and those serving a term of community custody, *see In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 884, 232 P.3d 1091 (2010).

Mr. Pinney was never arrested for the community custody violations at issue and has not been detained by WDOC.  The more apt authority from the United States Supreme Court is its decision in *Moody v. Daggett*, in which a parolee was convicted of and incarcerated for manslaughter and second degree murder committed while on parole. 429 U.S. at 80-81.  The crimes for which he had been serving parole and his newly-committed crimes were both federal crimes.  *Id*.  After Moody was incarcerated, the board of parole issued, but did not execute, a warrant for his parole violation.  It was

---

[5] Elaboration on the requirements of the formal revocation hearing appears at 408 U.S. at 488-89.

7

No. 39495-6-III
*In re Pers. Restraint of Pinney*

lodged with the prison as a detainer. *Id.* Mr. Moody asked the board to execute the warrant because he wanted imprisonment for violation of his parole to run concurrently with his homicide sentences. *Id.* He also believed the warrant adversely affected his parole eligibility for later convictions and his prison classification status. *Id.* at 85.

The Supreme Court held that simple issuance of a parole violator warrant does not trigger the duty to conduct an immediate hearing. *Id.* at 89. It pointed out that Moody's "present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions," and "[t]he other injuries [he] claims to suffer either do not involve a loss of protected liberty or have not occurred by reason of the warrant and detainer." *Id.* at 86-87.[6] It observed that in *Morrissey*, "we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Id.* at 87 (citing 408 U.S. at 488); *see also id.* at 89 ("The Commission therefore has no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant.").

In addition to the fact that Moody did not face a loss of liberty, the Court observed that there would be no need for a preliminary hearing in his case because "the subsequent

---

[6] In a footnote, the Court explained that it had previously "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. . . . The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system." *Moody*, 429 U.S. at 88 n.9.

8

No. 39495-6-III
*In re Pers. Restraint of Pinney*

conviction obviously gives the parole authority 'probable cause or reasonable ground to believe that the . . . parolee has committed acts that would constitute a violation of parole conditions.'" *Id.* at 86 n.7 (alteration in original) (quoting *Morrissey*, 408 U.S. at 485). Finally, it identified a practical advantage to conducting the hearing later: a parolee's institutional record is often the best source of information as to whether the parolee can reintegrate into society, and "[f]orcing [a] decision immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's recent convictions, . . . a decision to revoke parole would often be foreordained." *Id.* at 89.

Mr. Pinney seeks to distinguish *Moody* by asserting that the warrant in his case was "executed and fully active" whereas Moody was only subject to an "uncharged violation hold." Br. in Support of PRP at 16. This is simply wrong. An arrest warrant is "issued" upon being signed by the proper authority and "executed" when a violator is taken into custody pursuant to the warrant. *See, e.g.*, CrR 2.2; RCW 9.94A.716. The secretary has only issued a warrant for Mr. Pinney's violation; it has not been executed.

He also points to the Supreme Court's observations in *Moody* that because of the federal parole commission's discretion, Moody had overstated the adverse consequence of a late-stage hearing: the parole commission would continue to have the authority to release him from federal custody. He argues that in his case, by contrast, two jurisdictions are involved and Washington will lack discretion to retroactively impose a

9

No. 39495-6-III
*In re Pers. Restraint of Pinney*

concurrent sentence that the parole commission would have enjoyed in Moody's case.

Yet almost 50 years after *Moody*, Mr. Pinney does not identify a single case in which a

correction authority's inability to retroactively impose concurrent sentencing has been

held to require a result different from that in *Moody*. WDOC, on the other hand,

identifies dual-jurisdiction cases in which *Moody*'s holding has been applied, including

two from federal appellate courts. Resp. of DOC at 15-16 (citing cases). *And see State v.*

*Valentine*, 20 Wn. App. 511, 514-15, 580 P.2d 1119 (1978), in which this court held,

"The [*Moody*] court held it was permissible and appropriate to delay the decision on

revocation until after the petitioner had served his subsequent sentences. Thus, as long as

Mr. Valentine was being held on another criminal charge, *Moody* expressly negatives any

conclusion that *Gagnon* and *Morrissey* require that he receive an immediate revocation

hearing."[7]

---

[7] Mr. Pinney tries to distinguish *Valentine* arguing that unlike him, Valentine did not diligently seek a hearing and Valentine was not suffering an ongoing loss of liberty, whereas he is "restrained by the inability to work certain jobs, have more freedom in Arizona DOC's facility, and see early release." Reply Br. in Support of PRP at 5.

In *Valentine,* the defendant's court-appointed appellate lawyer filed an *Anders* brief (*Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967)), so this court mused about possible error. In so doing, it discussed how Valentine had himself to blame for the violation of his rule-based, time-for-trial right but it did not hold that a timely request for a probation revocation hearing would have triggered a constitutional duty to conduct one.

As for Mr. Pinney's alleged loss of liberty unrelated to confinement, petitioner Moody complained of injuries other than confinement, which the Supreme Court held "do not involve a loss of protected liberty or have not occurred by reason of the warrant and detainer." *Moody*, 429 U.S. at 87. The lack of causation is even clearer here because

10

No. 39495-6-III
*In re Pers. Restraint of Pinney*

A final case cited by Mr. Pinney is *State v. Welker*, 157 Wn.2d 557, 141 P.3d 8 (2006), but WDOC rightly observes that it construes procedures provided by the Interstate Agreement on Detainers, *see* chapter 9.100 RCW, and has no application here.

II.     BECAUSE STATUTORY PROVISIONS FOR ADDRESSING COMMUNITY CUSTODY VIOLATIONS ARE NOT ABSURD OR MEANINGLESS WITHOUT A TIME FRAME FOR EXECUTING A WARRANT, WE HAVE NO BASIS FOR IMPLYING A TIME FRAME

As recounted earlier, RCW 9.94A.737(1) provides that "[i]f an offender is accused of violating any condition or requirement of community custody, [WDOC] shall address the violation behavior." It states that WDOC "may" hold disciplinary proceedings "not subject to chapter 34.05 RCW," Washington's Administrative Procedure Act, which governs agency adjudicative proceedings unless otherwise provided. *See* RCW 34.05.410(1).

Elsewhere, the statute identifies some procedures to be followed for high level violations, but otherwise provides that WDOC shall adopt rules creating procedures for hearings on those matters, which are "offender disciplinary hearings and are not subject to chapter 34.05 RCW." RCW 9.94A.737(6). RCW 9.94A.737(6)(b) requires a hearing within 5 to 15 days from the giving of written notice, depending on the defendant's custodial status, and RCW 9.94A.737(1) states that WDOC shall notify the offender in

it is the prison policies of Arizona, not Washington, that impose the consequences of the warrant that are the basis for Mr. Pinney's complaint.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39495-6-III
*In re Pers. Restraint of Pinney*

writing of the violation process. No provision identifies a time frame within which the

written notice is required, however.

"'Our paramount duty in statutory interpretation is to give effect to the

Legislature's intent.'" *Moses Lake Irrig. & Rehab. Dist. v. Pheasant*, 24 Wn.

App. 2d 428, 453, 520 P.3d 1052 (2022) (internal quotation marks omitted) (quoting

*State v. Barnes*, 189 Wn.2d 492, 495, 403 P.3d 72 (2017)). If a statute's meaning is plain

on its face, then the court will give effect to that plain meaning as an expression of

legislative intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242,

88 P.3d 375 (2004).

If we perceived either the federal or the state constitution as requiring WDOC to

take some action toward a hearing promptly or within a reasonable time after issuing a

warrant, we could construe RCW 9.94A.737 as including that requirement under the

canon of constitutional avoidance. *See, e.g.*, *In re Det. of Marcum*, 189 Wn.2d 1, 12, 403

P.3d 16 (2017) (Gordon McCloud, J., concurring). We find no constitutional requirement

for such action, however, and, in fact, can identify reasons why no such requirement

would be imposed: because WDOC may lack jurisdiction over the offender, or it may be

difficult or undesirable to hold the hearing until the offender completes a different

sentence.

Otherwise, a perceived omission may not be corrected by the courts unless it

renders the entire statute absurd or meaningless. *In re Det. of Martin*, 163 Wn.2d 501,

12

No. 39495-6-III
*In re Pers. Restraint of Pinney*

511, 182 P.3d 951 (2008); *State v. Delgado*, 148 Wn.2d 723, 730, 63 P.3d 792 (2003);

*State v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982) (observing that the court "has

exhibited a long history of restraint in compensating for legislative omissions").  For the

legislature to omit a time frame within which WDOC must act after issuing a warrant

does not render RCW 9.94A.737 absurd or meaningless.

III.     A REQUESTED REMEDY IS NOT AVAILABLE

WDOC's final, additional basis for dismissing Mr. Pinney's PRP is that the

remedies he seeks are not available.  To repeat, the relief he requested is that this court

"[o]rder DOC to clear up my warrant and release me from their supervision and

jurisdiction," or, "[i]n the alternative, . . . order DOC to provide me with a remote hearing

where I can ask for a sentence concurrent to my Arizona sentence."  PRP at 5.

A petitioner must not only show that he is entitled to a remedy, but must show

that he is entitled to the remedy he requests.  *E.g.*, *In re Pers. Restraint of Snively*,

180 Wn.2d 28, 32, 320 P.3d 1107 (2014) (per curiam) (petitioner was entitled to a

correction of his judgment and sentence, but not to withdraw his guilty plea); *In re Det. of*

*Reyes*, 184 Wn.2d 340, 348, 358 P.3d 394 (2015) (declining to decide an appropriate

remedy, if any, where the remedy sought was not appropriate).  Mr. Pinney's requested

remedy of clearing up his warrant and releasing him from WDOC supervision and

jurisdiction is inappropriate.  It would eliminate WDOC's right to maintain a warrant or

detainer if it conducted a violation hearing, revoked his community custody, and imposed

13

No. 39495-6-III
*In re Pers. Restraint of Pinney*

additional confinement time (a result that he has been informed is likely). And in any

event, Mr. Pinney has additional community custody time to serve, which remains tolled

while he is out of state.

The petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_Siddoway, JPT_
Siddoway, J.P.T.

WE CONCUR:

_Lawrence-Berry, A.C.J._
Lawrence-Berrey, A.C.J.

_Staab, J._
Staab, J.

14